697 So.2d 341 (1997)
In re GAS WATER HEATER PRODUCTS LIABILITY LITIGATION. (Three Cases)
Nos. 97-C-121, 97-C-142 and 97-C-299.
Court of Appeal of Louisiana, Fifth Circuit.
June 30, 1997.
*342 Stephen P. Murphy, Washington, DC, and Frederick W. Bradley, New Orleans, and Edward T. Hackney, Southcorp USA, Inc., Atlanta, GA, Steven W. Usdin, John P. Cerise, Suzanne M. Ciaccio, James F. Shuey, Scott S. Partridge, New Orleans, for Defendant/Relator.
Wendell H. Gauthier, Bruce C. Dean, Metairie, Robert M. Johnston, New Orleans, for Plaintiff/Respondent.
Before WICKER, CANNELLA and DALEY, JJ.
DALEY, Judge.
These consolidated Applications for Supervisory Writs arise out of a class action litigation filed on June 25, 1996, in the First Parish Court for the Parish of Jefferson entitled "In Re: Gas Water Heater Products Liability Litigation" naming as defendants three hot water heater manufacturers (State Industries, Inc., Mor-Flo Industries, Inc., and Rheem Manufacturing Co.) and three Jefferson Parish plumbing distributors of hot water heaters. The plaintiff class is alleged to be all residents of Louisiana who have purchased gas-fired hot water heaters over the past ten years from these three manufacturers. The class has not yet been certified.
Writ No. 97-C-121 was filed by defendant State Industries, Inc. on February 3, 1997, objecting to the failure of the First Parish Court to grant their Motion to Transfer the case to the 24th Judicial District Court, claiming that the jurisdictional amount of the claims in controversy exceeded the First Parish Court's statutory limit of $10,000.00. Writ No. 97-C-142 was filed by defendant Mor-Flo Industries, Inc. on February 7, 1997, alleging the same grounds as Writ No. 97-C-121 and further arguing that Mor-Flo was entitled to a jury trial.
These two writ applications were consolidated by order of this court. On March 26, 1997, this court denied the writ applications, finding that the litigation was properly in First Parish Court. Judge Cannella dissented with reasons. The parties filed writ applications with the Supreme Court. On May 1, 1997, the Supreme Court granted the writ applications and remanded the matter to this court for briefing, oral argument, and opinion.
Meanwhile, on March 27, 1997, defendant Rheem Manufacturing Company (Rheem) filed Writ No. 97-C-299, seeking this court's *343 review of the trial court's denial of their Exception of Lack of Subject Matter Jurisdiction on the grounds that First Parish Court's statutory limit on the amount in dispute had been exceeded by the plaintiffs' claims, and denial of their Exception of Improper Cumulation. After the Supreme Court's remand of the consolidated writs, this court on its own motion consolidated Writ 97-C-299 with the remanded writs for briefing, oral argument, and opinion.
This suit has been previously removed to and remanded from Federal District Court. The procedural history is evidence of the considerable time and resources spent by the parties battling over what is the proper forum. Lengthy legal battles over forum undermine confidence in the legal system by inferring that a tactical advantage in a particular forum is of overriding importance to the merits of the suit.
Defendant manufacturers all seek transfer of this class action to district court based upon the position that the jurisdictional amount of this suit exceeds First Parish Court's statutory limit of $10,000.00. They also suggest that the First Parish Court is not equipped to handle a complex class action litigation. Plaintiffs' counsel oppose aggregation of damage claims for jurisdictional purposes, stipulating that no class member's claim exceeds $10,000.00. The primary legal issue presented to the Court is whether the claims of class members are aggregated or stand alone for subject matter jurisdictional purposes. The trial court found the "amount in dispute" was the amount claimed by each individual plaintiff, not the aggregated amount. We affirm the trial court, finding that class members' claims involving separate damages are not aggregated for subject matter jurisdictional purposes.

Jurisdiction and Powers of First Parish Court of Jefferson
The First Parish Court of the Parish of Jefferson has civil jurisdiction concurrent with that of the state 24th Judicial District Court, within its territorial boundaries, when the amount in dispute does not exceed ten thousand dollars, exclusive of interest, costs, and attorneys fees. LSA-R.S. 13:2561.2. First Parish Court has general jurisdiction except for certain limitations enumerated in LSA-R.S. 13:2561.4. The First Parish Court is not prohibited by law from hearing a class action lawsuit, provided that its other jurisdictional requirements are met. First Parish Court judges are elected, possess the same qualifications that are required of district judges, and have all the powers of a district court judge within the limits of the jurisdiction of the court. LSA-R.S. 13:2561.5 and 2561.7. The provisions of the Louisiana Code of Civil Procedure are applicable to the First Parish Court in all civil cases. LSA-R.S. 13:2561.10.
Defendants argue that this class action suit falls outside the jurisdictional limits of First Parish Court and seek transfer or dismissal of the case. In reviewing defendants' position, the court must be mindful that a basic and fundamental principle of civil procedure is that the plaintiff chooses the forum for a lawsuit, and when there is a choice between two courts with concurrent jurisdiction, the plaintiff's choice controls absent some overriding issue of forum non conveniens.

Jurisdiction"amount in dispute"
LSA-R.S. 13:2561.2 provides that the First Parish Court has civil jurisdiction concurrent with that of the district court when the amount in dispute does not exceed $10,000.00 exclusive of interest, costs and attorneys' fees.
At issue is the definition of "amount in dispute" in the context of a class action. The Louisiana Code of Civil Procedure defines the "amount in dispute" as the amount demanded, including punitive damages, or the value asserted in good faith by the plaintiff. This does not include interest, court costs, attorney fees, or penalties, even when provided by agreement or law. LSA-C.C.P. art. 4841(B).
The plaintiffs' petition asserts that each individual plaintiff's claim does not exceed $10,000.00 in value. Therefore, the plaintiffs argue that the case falls under the jurisdiction of First Parish Court. The defendants argue that the amount in dispute should be *344 calculated by aggregating all of the claims of each class member. Defendants argue in brief that, "The amount at risk in this multi-million dollar class action involving close to a million potential class members clearly exceeds $10,000.00."
Class action is a procedural mechanism designed to efficiently and economically manage large numbers of claims in which common issues predominate over individual issues. Stevens v. Board of Trustees of Police Pension Fund, 309 So.2d 144, 151 (La. 1975). As such, the claims of individual plaintiffs are not aggregated. A proper analogy is to cumulated plaintiffs with similar causes of action against defendants, authorized by LSA-C.C.P. art. 461 and 463. In Knox v. Palermo, 180 So.2d 750 (La.App. 4 Cir.1965), three lessees filed suit against their landlord in First City Court for the City of New Orleans. The plaintiffs were joined because the cause of action and facts were the same. Although the First City Court's maximum jurisdictional amount in dispute was $1,000.00, the total aggregate claim of all three plaintiffs was $1,500.00. The Fourth Circuit held that each tenant's claim was within the jurisdiction of the City Court. For jurisdictional amount purposes, the claims were not aggregated because the claims were not dependent upon the other and each involved separate damages. The court relied on LSA-C.C.P. art 463(2), which states: "Two or more parties may be joined in the same suit as either plaintiffs or defendants if: ... (2) Each of the actions cumulated is within the jurisdiction of the court." In this matter both plaintiffs' counsel and defense counsel advised this court during oral argument that the class members' damages are not identical and will vary in amounts.
Federal courts have interpreted "the amount in controversy" language for jurisdictional purposes. While Federal court rulings are not binding on us, we find that their rulings on this issue are instructive. In Zahn v. International Paper, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973),[1] the United States Supreme Court held that each plaintiff in a class action must satisfy the jurisdictional amount and claims cannot be aggregated for jurisdiction determinations. Federal courts have rejected defendants' argument, finding repeatedly that claims are not aggregated for subject matter jurisdictional purposes.[2] There are exceptions, however, to the nonaggregation rule. Zahn held that "when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough that their interest collectively equal jurisdictional amounts." Single title or right was defined in Troy Bank v. G.A. Whitehead and Company, 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81 (1911) as "a single thing or identity in which the plaintiffs have a common and undivided interest, and which neither can enforce in the absence of the other." In other words, the presence of each plaintiff in the suit is necessary and indispensable for the recovery of their common right. Holt v. Lockheed Support Systems, Inc., 835 F.Supp. 325 (W.D.La.1993). This is the same factor Louisiana courts require before they would aggregate claims in joinder cases. See Knox v. Palermo, supra. In this case the parties are not indispensable. Each plaintiff could bring this action in his and her own right.
Defendants argue that the named plaintiffs will obtain a judgment exceeding the $10,000.00 jurisdictional ceiling and that all class members are not party plaintiffs. Class actions usually consist of at least two stages: first, disposition of the common issues; and second, the adjudication of non-common individual issues, such as defenses applicable to less than all class members, nature, scope and amount of damages and other issues which cannot be adjudicated with res judicata effect as to all class members. While all class members are not named plaintiffs, unless a class member opts-out of the litigation *345 they are considered parties to the litigation and are bound by the ruling of the case. In class actions where there are differing degrees or elements of damages amongst class members, each class member's claim must be addressed individually or at best in representative sub-classes. Defendants argue that the named class representatives will receive, if successful, a multi-million dollar judgment as evidence that First Parish Court does not have proper jurisdiction of this case. Defendants' position misrepresents the potential outcome of this class action litigation. In class action litigation each class member is identified through a proof of claim or other formal process and each class member is afforded a remedy. To suggest that there would be one multi-million dollar judgment in favor of the class representatives is erroneous.
The Code of Civil Procedure articles on cumulation and on class action apply uniformly in district court and in parish courts or other courts of limited jurisdiction. These articles do not require plaintiffs with separate damage claims to aggregate the amount of their individual claims so as to divest a court of jurisdiction.

Right to Trial by Jury
The second jurisdictional challenge raised by the defendants is that they are entitled to a jury trial, which is not permissible in First Parish Court, and therefore, First Parish Court is an inappropriate forum.
In Louisiana, the right to trial by jury in a civil matter is recognized, but limited. LSA-C.C.P. arts. 1731 and 1732. A trial by jury is not available in all cases where a jury trial is specifically denied by law. LSA-C.C.P. art. 1732(6). There can be no trial by jury in any case in a parish court. LSA-R.S. 13:1450(A).
The nature and amount of the principal demand determine whether any issue in a civil trial is triable by jury. La. C.C.P. art. 1731(B). A trial by jury is not available in a suit "where the amount of no individual petitioner's cause of action exceeds $50,000.00 exclusive of interest and costs." La. C.C.P. art. 1732(1).
Defendants argue that in class actions, the court must consider both the amount of the cause of action combined with the amount of attorneys' fees by virtue of LSA-C.C.P. art. 595.[3] Defendants argue that art. 595 awards the attorneys' fees to the named class representatives, and that the allocation of attorneys' fees to the named or representative plaintiffs will cause their damages to exceed the requisite $50,000.00, giving defendants a right to a jury trial under LSA-C.C.P. art. 1732(1).
Under Louisiana law, attorneys' fees are not recoverable as an element of damages unless they are provided by statute or contract. Woodmen of the World Life Ins. Soc. v. Hymel, 610 So.2d 195 (La.App. 3 Cir.1992).[4]
Plaintiffs' petition asserts a cause of action based upon LSA-C.C. art. 2524, which provides that a product sold must be reasonably fit for its ordinary use. This cause of action is one for breach of contract and not for breach of warranty against redhibitory defects. See Comments, LSA-C.C. art. 2524. The petition does not allege any cause of action that includes attorneys' fees as an element of damages, nor does the petition pray for the award of attorneys' fees. Nor does the petition allege that the contract of sale contained provisions for attorneys' fees.
*346 LSA-C.C.P. art 595 is discretionary; it does not require the court to award attorneys' fees, nor does it make attorneys' fees a statutory or legal element of damages in a class action when the underlying cause of action does not otherwise provide for attorneys' fees as a statutory element of damages. This article does not create an element of damages for attorneys' fees; rather, art. 595 provides a vehicle whereby the trial court, at its discretion, may award the reasonable costs of litigation, including attorneys' fees, to the class representatives when as a result of the class action a fund is made available. Moreover, the trial judge's discretion to award attorneys' fees is contingent upon the establishment of a fund, which is not an automatic consequence of class actions and the eventual existence of which cannot be determined at this juncture. The official revision comments to this article make clear that the first paragraph of this article intends that the reasonable expenses of litigation allowed the successful representative parties are to be paid out of the fund or benefits made available by their efforts; in other words, the expenses are borne pro rata by all class members. Art. 595 does not increase the amount of the defendants' potential exposure; this only occurs when attorneys' fees are a statutory or contractual element of damages awarded in addition to the plaintiff's recovery of actual damages. Defendants rely upon Cambridge Corner Corp. v. Menard, 525 So.2d 527 (La.1988) to support their position that attorneys' fees must be added to determine the right to jury trial; however, that case can be clearly distinguished. Cambridge was not a class action; it involved a suit between a lessor and a lessee on a contract of lease that provided 15% attorneys' fees as an element of damages if suit were filed. The award of attorneys' fees was authorized by LSA-C.C. art. 2000; Cambridge does not stand for the universal proposition that in every case, the amount of the petitioner's cause of action consists of his principal demand for damages plus his attorneys' fees. The Supreme Court did not intend to include attorneys' fees in this equation when in the vast majority of civil causes of action, the plaintiff has no right to attorneys' fees as an element of damages.
Defendants cite In re Abbott Laboratories, 51 F.3d 524 (5th Cir.1995), wherein the federal Fifth Circuit held that attorneys' fees awarded in a class action were to be considered in determining jurisdictional amounts and are not divided among all the class members, but rather allocated solely to the class representatives. However, this case is easily distinguished. The underlying cause of action asserted in Abbott was violations of state antitrust laws (LSA-R.S. 51:121 et seq). Damages for any violation of this part include treble damages and reasonable attorneys' fees. LSA-R.S. 51:137. Therefore, because attorneys' fees are included as a statutory element of a plaintiff's damages, consideration of attorneys' fees was proper to determine the jurisdictional amount for a jury trial. As Judge Fallon found in Cooper v. Koch Pipeline, 95-2373, 1995 WL 931091 (E.D.La.1995):
"... La. C.Civ.Pro. 595 allows the court to designate a certain amount of a specific fund to be awarded as attorney's fees and does not compel the defendants to pay anything over and above the amount of compensatory damages awarded. Louisiana's class action law does not require the defendant to pay one dime in attorney's fees, it merely gives the trial court the power to designate how much of the final pie the named plaintiffs' attorneys shall receive as fees. Considering the striking differences in the two statutes, the Fifth Circuit's holding in Abbott does not require the addition of attorney's fees to the amount in controversy determination in class actions suits in negligence."
Cooper v. Koch Pipeline, Order and Reasons, (E.D.La.12/11/95), p. 6.
In a line of unreported cases, the Eastern District of Louisiana has limited Abbott's holding, finding it does not require the aggregation of attorney's fees to the amount in controversy in a class action brought pursuant to Art. 595, where attorney's fees are not made a part of plaintiff's damages by another statute. See Greer v. Mobil Oil Corporation, 1997 WL 180477 (E.D.La.1997); Miles v. MCI Telecommunications Corp., 1995 WL 731669 (E.D.La.1995) (specifically disavowing *347 Millet v. Marathon Oil Co., 1995 WL 396313 (E.D.La.1995); Harrison v. Union Carbide Corp., 1995 WL 555616 (E.D.La.1995); Cappel v. Quick & Reilly, Inc., 1996 WL 684456 (E.D.La.1996)). The author of these opinions, Judge Clement, found unpersuasive cases relied on by defendants, Brooks v. Georgia Gulf Corporation, 924 F.Supp. 739 (M.D.La.1996) and Kimball v. Modern Woodmen of America, 939 F.Supp. 479 (M.D.La. 1996).
We note that in Kimball, the plaintiffs' petition requested attorneys' fees. Similarly, in Francis v. Lomas Mortgage USA, Inc., 1995 WL 468172 (E.D.La.1995) (Duval, J.), plaintiffs requested attorneys' fees in their petition.
We find that Abbott's holding is limited to cases in which the plaintiffs' attorneys' fees are either statutory or contractual elements of the damages.
Official Revision Comment (a) to art. 595 makes clear that the first paragraph of this article intends that the reasonable expenses of litigation allowed the successful representative parties are to be paid out of the fund or benefits made available by their efforts. The fund is made available to all class members, not merely the class representatives. Art. 595 sets up a mechanism for judicial oversight over the payment of attorneys' fees and costs. The court has a duty to assure fairness in the results reached in class actions since all parties are not present or active. Art. 595 creates a mechanism to have plaintiffs' counsel present to the court a plan or proposal for payment of fees and costs when attorneys' fees and costs are not already fixed by judgment of the court as would be done if they were a statutory element of damage. This procedure does not create a back door to a jury trial.

Improper Cumulation
Rheem argues that the court erred in denying its Exception of Improper Cumulation and Joinder of parties. Rheem argues that the seller the plaintiff has chosen only represents 1% of the people who bought Rheem water heaters. For this reason, Rheem argues there is no "community of interest" that is necessary for joinder. LSA-C.C.P. art. 463. The trial court correctly ruled that it was proper to cumulate the plaintiffs' actions against sellers and manufacturers of hot water heaters. Defendants' argument that there is no "community of interest" between defendants is better directed to class certification issues which are not presently before the court.
No action has yet been taken at the trial level to approve the proposed class. The exact number of potential class members is unknown. The burden of establishing numerosity, adequate representative capacity, and common character rests with the plaintiffs. Class actions should be restricted to cases in which the procedural device would achieve economies of time, effort and expense, and promote uniformity of decisions as to persons similarly situated without sacrificing procedural fairness. McCastle v. Rollins Environmental Services, 456 So.2d 612 (La.1984). The trial court has considerable discretion on the issue of certification and should not hesitate to accept or reject the class or to restrict or limit the class to fulfill the goals of efficiency and effectiveness set forth by the Supreme Court in McCastle.

Conclusion
We hold that in class actions where individual class members have separate claims for damages the subject matter jurisdictional amount is determined by each individual plaintiff's claim for damages, not the aggregation of all plaintiffs' damages. Further, we hold that the "amount in dispute" for purposes of a jury trial does not include attorneys' fees in this case, since attorneys' fees are not a statutory or contractual element of plaintiffs' alleged damages. Accordingly, the writ applications are DENIED.
CANNELLA, J., dissents with reasons.
CANNELLA, Judge, dissenting with reasons.
I dissent from the majority opinion in this case being of the view that this multi-million dollar class action should be transferred from the First Parish Court to the Twenty-Ninth Judicial District Court.
In its simplest form, the question presented by all three of these writ applications is a question of statutory interpretation, that is, *348 whether LSA-R.S. 13:2561.2 grants First Parish Court jurisdiction over this class action.
As pointed out by the majority, LSA-R.S. 13:2561.2, which confers jurisdiction in First Parish Court for Jefferson Parish, provides jurisdiction concurrent with that of the district court "when the amount in dispute, or the value of the property involved, does not exceed ten thousand dollars, exclusive of interest, costs and attorney fees."
It is conceded that the damage recovery of no one member of the class will alone exceed the ten thousand dollar jurisdictional amount for parish court. Plaintiffs argue that fact alone is dispositive of the issue. Defendants argue to the contrary as amply set forth in the majority opinion.
There are no state court cases interpreting this article or defining what is meant by the "amount in dispute" as it pertains to class actions. As noted in the majority opinion, in Knox v. Bilbe, 180 So.2d 750 (La.App. 4th Cir.1965) the Fourth Circuit held that the claimed amount for three plaintiff lessees could not be joined to take the case out of parish court. However, more recently, in Walker v. Thap, 92-0016 (La.App. 4th Cir.5/17/94), 637 So.2d 1150 the Fourth Circuit again considered the meaning of "amount in dispute," as it pertained to an Orleans Parish Court, and held that the "`[a]mount is dispute' means the maximum amount that the successful party may be awarded by judgment; conversely, the maximum amount the unsuccessful party may be ordered to pay."
While the majority seems to rely on several federal cases, they are not dispositive of the question presented herein which is strictly a matter of statutory interpretation of a state statute. The issue before us must be considered in light of the fact that a district court is the court of general jurisdiction and parish court is a court of limited jurisdiction. Thus, the meaning of the term "amount in dispute," as used in the statute granting the limited jurisdiction, must be construed in accordance with the legislative intent, which was to allow only small cases to be handled in the parish court.
Therefore, in my view, the term "amount in dispute" as used in LSA-R.S. 13:2561.2, in the context of a class action, must be construed in a manner that effects the legislative purpose, i.e. allowing only small cases to be handled in parish court. As applied to this class action case, in which the overall judgment against the defendants could reach millions of dollars, the term must be construed as referring to an amount other than simply that of an individual claimant. The "amount in dispute" must be determined by aggregating the claims of the class or, as held by the Fourth Circuit in Walker, by considering the amount that the unsuccessful party may be ordered to pay. In either case, parish court lacks jurisdiction over this case.
To hold, as the majority does, that the term "amount in dispute" as used in LSA-R.S. 13:2561.2, which grants limited concurrent jurisdiction to parish court, should only include the amount of one individual damage claim is, in my view, contrary to the legislative purpose of the statute.
Accordingly, for the reasons set out above, I dissent from the majority opinion, being of the view that plaintiffs have not met their burden of establishing that this multimillion dollar class action comes within the limited jurisdiction of First Parish Court.
NOTES
[1] The portion of Zahn `s judgment concerning supplemental jurisdiction was legislatively overruled with the passage of 28 U.S.C. § 1367. Supplemental jurisdiction is not pertinent to the instant case and the part of Zahn's holding we rely on in our analysis remains unaffected by the statute's passage.
[2] More v. Intelcom Support Services, 960 F.2d 466 (5th Cir.1992); LeBlanc v. Kansas City Southern Ry. Co., 752 F.Supp. 1302 (M.D.La. 1990); Coleman v. Southern Norfolk, 734 F.Supp. 719 (E.D.La.1990).
[3] Art. 595. Award of expenses of litigation; security for costs

The court may allow the representative parties their reasonable expenses of litigation, including attorney's fees, when as a result of the class action a fund is made available, or a recovery or compromise is had which is beneficial, to the class.
The court, on contradictory motion at any stage of the proceeding in the trial court prior to judgment, may require the plaintiff in a class action to furnish security for the court costs which a defendant may be compelled to pay. This security for costs may be increased or decreased by the court, on contradictory motion of any interested party, on a showing that the security furnished has become inadequate or excessive.
[4] For example, in redhibition suits (LSA-C.C. art. 2545), suits on open account (LSA-R.S. 9:2781), and when attorneys' fees are specifically provided for in the contract between plaintiff and defendant (LSA-C.C. art. 2000)